IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 08-cv-01606-LTB-KLM

PLUM CREEK WASTEWATER AUTHORITY,

        Plaintiff,
v.

AQUA-AEROBIC SYSTEMS, INC., a foreign corporation,

        Defendant.
_____

MEMORANDUM OPINION AND ORDER
_____

Babcock, J.

      This matter is before me on a Motion to Remand Pursuant to 28 U.S.C. § 1447(c) [**Doc # 11**], in which Plaintiff, Plum Creek Wastewater Authority ("Plum Creek"), asks that this matter be remanded back to District Court for Douglas County, Colorado, following a Notice of Removal filed by Defendant Aqua-Aerobic Systems, Inc. ("Aqua-Aerobic"). Oral arguments will not materially aid in the resolution of this request. After consideration of the law and the parties' briefing, I GRANT Plum Creek's request to remand this case.

      On May 23, 2008, Plum Creek filed its complaint in this matter seeking damages against Aqua-Aerobic as the seller/supplier of allegedly faulty "phosphorus filters" that were installed in a wastewater treatment plant constructed and owned by Plum Creek for: breach of contract; breach of express warranty; failure of essential purpose of limited remedy; revocation of acceptance; and negligent misrepresentation. The complaint was initially filed in the District

1

Court for the City and County of Denver, Colorado (Case No. 08-cv-4424), but was subsequently transferred to Douglas County District Court. Aqua-Aerobic then filed a Notice of Removal with this court on July 29, 2008. Plum Creek objects to the removal pursuant to 28 U.S.C. § 1447(c), and seeks remand back to the District Court for Douglas County.

## I. REMOVAL

Under 28 U.S.C. § 1441, any action filed in state court in which this court has original jurisdiction may be removed to federal court. Aqua-Aerobic's Notice of Removal alleges federal jurisdiction pursuant to diversity of citizenship as set forth in 28 U.S.C. § 1332(a). Section 1332(a) provides that federal district courts have original jurisdiction of all civil actions where the matter in controversy exceeds that sum or value of $75,000.00, exclusive of interest and costs, and there is complete diversity of citizenship between the parties.

Plum Creek concedes that this case involves complete diversity of citizenship, and does not contest the allegation that matter in controversy exceeds the sum or value of $75,000. Rather, Plum Creek challenges the removal to this court on the basis that this dispute is subject to a forum selection clause that provides that "all civil actions brought in relation to this Contract shall be filed in District Court, Douglas County, State of Colorado."

## II. BACKGROUND

The relevant underlying facts, as alleged in the complaint, are as follows. In 2001, Plum Creek decided to expand its wastewater treatment plant located in Castle Rock, Colorado. Plum Creek retained engineers Rothberg, Tamburini & Winsor ("RTW") to design and prepare plans and specifications for construction of the plant expansion. RTW's plan required the use of "phosphorus filters." In the winter and spring of 2002, prior the bid process for construction,

RTW and Plum Creek negotiated with Aqua-Aerobic to use their "tertiary cloth media filter systems" as the phosphorus filters in the expanded wastewater plant. The agreed upon purchase price for the phosphorus filters was $430,000.

When the construction of the wastewater plant went out for bid, the plans and specifications required the general or prime contractor to purchase (for $430,000) and install the phosphorus filters from Aqua-Aerobic. The contract to build the plant was ultimately awarded to Grimm Construction Company (now known as Garvey Construction Company) on or about August 20, 2002. Substantial completion of the project occurred, three years later, on or about June 27, 2005. Plum Creek alleges that after the completion of the wastewater plant, and within the two year warranty period, the filters did not perform as promised despite numerous attempts to repair the system. Thereafter, Plum Creek filed this lawsuit against Aqua-Aerobic.

### III.  FORUM SELECTION CLAUSE

A plaintiff has an "absolute" statutory right to remove a case to federal court, but this right may be contractually waived by virtue of a forum selection clause. *See Excell, Inc. v. Sterling Boiler & Mechanical, Inc.*, 106 F.3d 318 (10th Cir. 1997). Where a forum selection clause agreed to during arms-length negotiations by sophisticated parties, specifies venue and jurisdiction with mandatory or obligatory language, the clause is presumptively valid and must be enforced unless the party seeking to avoid the agreed-to forum demonstrates that enforcement would be unreasonable under the circumstances. *In re D.E. Frey Group, Inc.,* 387 B.R. 799, 804 (D. Colo. 2008)(*citing M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)); *see also Edge Telecom, Inc. v. Sterling Bank,* 143 P.3d 1155, 1158 -1159 (Colo. App. 2006).

The forum selection clause relied upon here by Plum Creek is set forth in the Prime Contract, dated August 20, 2002, between Plum Creek, as the "Owner," and Grimm Construction as the "Contractor." It is entitled "Controlling Law" and states that:

> This Contract shall be governed and construed according to the law of the State of Colorado. All civil actions brought in relation to this Contract shall be filed in the District Court, Douglas County, State of Colorado.

Aqua-Aerobic does not challenge the validity of the forum selection provision. Rather, it argues that it is not bound by the clause and that it is not applicable to this lawsuit. Plum Creek maintains that Aqua-Aerobic is bound to the clause through a flow down clause in the Prime Contract, and a related provision in the applicable Purchase Order.

## IV. RELEVANT CONTRACT PROVISIONS

In addition to the forum selection clause, the Prime Contract contains a flow down provision. That provision is entitled "Concerning Subcontractors, Suppliers, and Others" and provides, in its entirety, as follows:

> All Work performed for CONTRACTOR by a Subcontractor or Supplier will be pursuant to an appropriate agreement between CONTRACTOR and the Subcontractor or Supplier *which specifically binds the Subcontractor or Supplier to the applicable terms and conditions of the Contract Documents for the benefit of the OWNER* and ENGINEER. Whenever any such agreement is with a Subcontractor or Supplier who is listed as an additional insured on the property insurance provided in paragraph 5.06, the agreement between the CONTRACTOR and the Subcontractor or Supplier will contain provisions whereby the Subcontractor or Supplier waives all rights against OWNER, CONTRACTOR, ENGINEER, ENGINEER's Consultants, and all other individuals or entities identified in the Supplementary Conditions to be listed as insureds or additional insureds (and the officers, directors, partners, employees, agents, and other consultants and subcontractors of each and any of them) for all losses and damages caused by, arising out of, relating to, or resulting from any of the perils or causes of loss covered by such policies and any other property insurance applicable to the Work. If the insurers on any such policies require separate waiver forms to be signed by any Subcontractor or Supplier, CONTRACTOR will obtain the same.

4

[Emphasis Added].

Aqua-Aerobic provides the applicable language contained in its agreement with Grimm Construction – in the form of a purchase order – for the phosphorus filters. The Purchase Order, dated October 10, 2002, includes "Attachment TC" which provides that:

> Supplier agrees to abide by all applicable terms and conditions of the General Contract between the Owner and the Prime Contractor, and warrants that the material covered by this agreement conforms to the requirements thereof.

## V. ANALYSIS

Plum Creek argues that the flow down provision in the Prime Contract and the provision in the Purchase Order binds Aqua-Aerobic to the forum selection clause. The relevant language in the flow down provision of the Prime Contract requires that the work performed by Aqua-Aerobic – as a supplier on the project – must be done pursuant to an agreement that "specifically binds" it "to the applicable terms and conditions of the Contract Documents for the benefit of" Plum Creek – as the owner. In turn, that agreement, in the form of the purchase order, provides that Aqua-Aerobic "agrees to abide by all applicable terms and conditions" of the Prime Contract. Plum Creek argues that the forum selection clause is an applicable term and condition in favor of the owner, that Aqua-Aerobic agreed to abide by in the Purchase Order.

Aqua-Aerobic argues that it is not bound to the forum selection clause in the Prime Contract. Aqua-Aerobic first asserts that the forum selection clause is limited by its own terms to civil actions related only to the Prime Contract. Specifically, Aqua-Aerobic argues that the forum selection clause applies to civil actions "brought in relation to *this Contract*" (emphasis added) and that the "Contract" is defined in the Prime Contract as the "entire and integrated written agreement between the OWNER and CONTRACTOR." Thus, by its own terms, the

forum selection clause is limited to disputes relating to the Prime Contract between Plum Creek, the owner, and its contractor, Grimm Construction. Because Plum Creek is suing Aqua-Aerobic here as a third party beneficiary of the Purchase Order – *see generally Jardel Enterprises Inc. v. Triconsultants, Inc.,* 770 P.2d 1301, 1302 (Colo. App. 1988) – it is not a civil action related to the Prime Contract and the forum selection is thus not applicable.

This argument, however, ignores the existence and applicability of the flow down clauses in both the Prime Contract, which requires that Aqua-Aerobic must be bound to the Prime Contract's applicable terms and conditions for the benefit of Plum Creek, and the related provision in the Purchase Order, in which Aqua-Aerobic agrees to abide by all applicable terms and conditions of Prime Contract. Under Colorado law, when one contract is incorporated into another, as here, the original agreement and those referred to must be construed as one. *See generally East Ridge of Fort Collins, LLC v. Larimer and Weld Irr. Co.*, 109 P.3d 969, 975 (Colo. 2005). I am not convinced that the terms of the forum selection clause in and of itself – which applies to civil actions "brought in relation to this Contract" – restricts its applicability only to civil actions arising out of the Prime Contract.

Aqua-Aerobic next asserts that the flow down clause in the Prime Contract is limited in that it only flows down "the applicable terms and conditions of the Contract Documents." In other words, because it provides for the flow-down of the *applicable* terms and conditions only – as opposed to incorporating *all* the terms and conditions – the flow down clause is necessarily limited. Aqua-Aerobic notes that the "applicable terms" is not further defined by the Prime Contract, but because the remainder of the clause – which is entitled "Concerning Subcontractors, Suppliers, and Others" – discusses waiving rights and insurance coverage issues,

6

Aqua-Aerobic argues that the forum selection clause is unrelated and was not intended to be an "applicable" term intended to bind suppliers. At the least, Aqua-Aerobic asserts that "applicable terms" are ambiguous and, thus, should be construed against Plum Creek as the drafter.

In addition, Aqua-Aerobic asserts that the provision in the Purchase Order – which provides that Aqua-Aerobic "agrees to abide by all applicable terms and conditions of the General Contract" – is likewise limited and does not contemplate the forum selection clause. Aqua-Aerobic again asserts that the term "applicable" must connote that not all terms and conditions are included, and thus the phrase "applicable terms and conditions" is ambiguous.

In response, Plum Creek argues that the phrase "applicable terms and conditions" – in both the Prime Contract flow down provision and the related Purchase Order provision – is not ambiguous, but "simply means all the terms and conditions which could apply to the particular sub[contractor] or supplier." Plum Creek further argues that the remaining language of the flow down provision does not relate to or address what terms should flow down to subcontractors and suppliers, but rather pertains to a different subject. Specifically, the remaining language applies only to agreements in which the subcontractor or supplier is listed as an additional insured on property insurance; when that is the case, the subcontract is specifically required to include provisions that waive all rights for damages for losses covered by applicable property insurance. Because this case does not involve an additional insured or property loss, Plum Creek argues that the language following the flow down provision in the first sentence is not at issue.

Flow down "clauses are designed to incorporate into the subcontract those provisions of the general contract relevant to the subcontractor's performance." *U.S. ex rel. Quality Trust, Inc. v. Cajun Contractors, Inc.*, 486 F.Supp.2d 1255, 1263 (D. Kan. 2007)(*quoting United Tunneling*

7

*Enterprises, Inc. v. Havens Const. Co., Inc.,* 35 F.Supp.2d 789, 794 -795 (D. Kan.1998)). Such clauses mean that "the same rights and duties should flow equally from the owner down through the general contractor to the subcontractor, as well as flowing from the subcontractor up through the general contractor to the owner." *United Tunneling v. Havens Const., supra*, 35 F.Supp.2d at 795 (*quoting* R. Cushman, *The Construction Industry Formbook*, § 5.08 (1979)); *see also Industrial Indemnity Co. v. Wick Construction Co.*, 680 P.2d 1100, 1103 (Alaska 1984). In effect, "[t]he parties to the subcontract thus assume the correlative position of the parties to the prime contract." *Id.* (*citing* A. Dib, *Forms and Agreements for Architects, Engineers and Contractors*, Chap. 7, § 1[1] (1979)). Cases generally apply flow down clauses to obligations related directly to the subcontractor's work; however, when the obligation at issue is more general, such as arbitration clause or a forum selection clause, the law is less clear. *See* 1 Bruner & O'Connor Construction Law § 3:32; § 5:126 (2008).

In *Topro Services, Inc. v. McCarthy Western Constructors, Inc*., 827 F.Supp. 666, 667 (D.Colo. 1993), the court concluded that under Arizona law – which requires that a contract must clearly evidence an intent that the document be made part of it in order to incorporate a document by reference – the forum selection clause in the prime contract did not bind a subcontractor. The basis for the court's ruling was that: 1) the plain meaning of flow down clause in the subcontract – in which the Subcontractor "binds itself to [the general contractor] for the performance of Subcontractor's Work in the same manner as [the general contractor] is bound to the Owner for such performance under [the general contractor's] contract with the Owner" – was to require the subcontractor to adhere to same performance requirements as the general contractor in completing its "Work;" 2) the prime contract required the general

8

contractor to "insert provisions with the venue and service of process requirements . . . in all subagreements, altering those paragraphs only to identify properly the contracting parties;" and 3) the subcontract contained no specific language incorporating terms of the prime contract in their entirety or the forum selection clause individually. *Id.*; s*ee also ADT Security Services v. Apex Alarm*, 2006 WL 650166 (D. Colo 2006)(not selected for official publication)(refusing to apply a prime contract's forum selection clause based upon flow down language, where the subcontract also contained a contrary exclusive forum selection clause); *U.S. Steel Corp. v. Turner Const. Co.,* 560 F.Supp. 871, 873 (S.D.N.Y. 1983).

In *Dynamic Drywall, Inc. v. Walton Construction Co., LLC*, 2007 WL 164351 (D. Kan. 2007)(not selected for publication), the subcontract provided that the "subcontract documents," including the prime contract, "are as fully a part of the Subcontract as if attached to this Agreement or repeated herein" and that "the Subcontractor shall assume toward the Contractor all obligations and responsibilities which the Contractor, under such documents, assumes toward the Owner and the Architect." The court in that case concluded that language in the subcontract providing that the parties shall have the benefit of all rights, remedies and redress against "insofar as applicable to this Subcontract" fails to restrict the very broad flow down provision and its complete incorporation and adoption by the subcontract of "all rights, remedies and redress" provided in the prime contract. *Id.* As such, the court applied the forum selection clause in the prime contract. *See also Scott Co. of California v. U.S. Engineering Co.,* 1994 WL 519493 (N.D.Cal. 1994)(not reported in F. Supp).

In this case, the flow down provision in the Prime Contract is broader than the subcontract provision in *Topro Services. v. McCarthy Western Constructors*, *supra*, which was

9

clearly restricted to work-based obligations and performance requirements. *See* 827 F.Supp. at 667 (in which the subcontractor "binds itself . . . for the performance of Subcontractor's Work in the same manner as [the general contractor] is bound to the Owner for such performance . . ."). I cannot read the language in the flow down provision here – which provides for the flow down of the applicable terms that favor Plum Creek – to exclude the forum selection clause. Instead, I agree with Plum Creek that the applicable terms and conditions are those that benefit the owner and are particular to that supplier or contractor. Likewise, the Purchase Order language – which is consistent with flow down provision language in the Prime Contract – binds Aqua-Aerobic to *all* applicable terms and conditions of the Prime Contract, including the forum selection clause. This is not a case in which the forum selection clause was either specifically required for flow down in the Prime Contract, or specifically accepted in the Purchase Order. However, I conclude that the broad language at issue here was not ambiguous and served to do just that. *See generally Dynamic Drywall v. Walton Const., supra* (ruling that the language against "insofar as applicable to this Subcontract" fails to restrict the very broad flow down provision).

Finally, to the extent that Aqua-Aerobic argues that its waiver of its right to remove this case to federal court – via the forum selection clause – cannot be deemed as knowing and intentional, I disagree. Specifically, it argues that the ambiguous flow-down provision that purportedly binds it to the ambiguous forum selection clause cannot be said to constitute "express words or unequivocal action" that would constitute a waiver of Aqua-Aerobic's statutory right to remove. Plum Creek argues that Aqua-Aerobic, as a sophisticated entity, cannot now assert that it was unfamiliar with the Prime Contract (which it notes was a public document readily available to Aqua-Aerobic) or the provisions therein, including the applicable

10

forum selection clause. Plum Creek notes that the complaint alleges that before they came to an agreement to buy the phosphorus filters, Aqua-Aerobic representatives reviewed the draft of the project manual for the plant, which also contained the forum selection clause, and they "agreed to accept the general conditions therein." Because I have determined that the flow down clause in the Prime Contract and the complimentary provision in the Purchase Order are not ambiguous, I likewise find and conclude that Aqua-Aerobic knowingly bound itself to the terms of the Prime Contract, including the forum selection clause.

Therefore, I conclude that the flow down provision in the Prime Contract (between Plum Creek and Grimm Construction, as the general contractor) together with the provision in the Purchase Order (between Grimm Construction and Aqua-Aerobic, as a supplier) serves to bind Aqua-Aerobic to the mandatory forum selection cause in the Prime Contract.

ACCORDINGLY, I GRANT the relief requested in the Opposition to Removal [**Doc # 11**] and, as a result, I ORDER this action be REMANDED to District Court for Douglas County, Colorado.

Dated: January   20  , 2009, in Denver, Colorado.

BY THE COURT:

   s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE